**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| AUTUMN C., | * |
| Plaintiff, | * |
| v. | *    Civil Action No. EA-25-1592 |
| FRANK J. BISIGNANO, | * |
| Commissioner of Social Security, | |
| | * |
| Defendant. | |
| | * |

**MEMORANDUM OPINION**

On May 16, 2025, Plaintiff Autumn C. petitioned this Court to review the final decision of the Social Security Administration (SSA or Commissioner) denying her claim for benefits. ECF No. 1.  This case was referred to a United States Magistrate Judge with the parties' consent.[1]  ECF Nos. 3–5; 28 U.S.C. § 636; Local Rule 301.4 (D. Md. Dec. 1, 2025).  Pending before the Court is Plaintiff's appeal, which is fully briefed.  ECF Nos. 13, 16, 18.  No hearing is necessary.  Local Rule 105.6.  This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  42 U.S.C. §§ 405(g), 1383(c)(3); *Craig* v. *Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, and for the reasons set forth below, the Commissioner's decision is affirmed.

I.    **BACKGROUND**

A.    **Procedural History**

On January 15, 2021, Plaintiff applied for Supplemental Security Income benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1381 *et seq.*[2]  ECF Nos. 8-3 at 22; 8-

---

[1]  This case was reassigned to the undersigned on February 27, 2026.

4 at 4, 14.[3]  Plaintiff claimed she was disabled within the meaning of the Act because she is unable to work due to epilepsy, depression, bipolar disorder, personality disorder, and anxiety with panic attacks.  ECF Nos. 8-3 at 24; 8-4 at 4–5, 14–15.  The SSA initially denied Plaintiff's application for benefits on September 21, 2021.  ECF No. 8-5 at 10.  Plaintiff sought reconsideration, and the SSA affirmed its initial determination on September 27, 2022.  *Id.* at 14, 20, 22.  Plaintiff requested a hearing before an Administrative Law Judge (ALJ), which was held on June 13, 2024.  ECF Nos. 8-3 at 22, 41; 8-5 at 25, 88, 104.  On July 1, 2024, the ALJ rendered a decision in which he found that Plaintiff was not disabled within the meaning of the Act.  ECF No. 8-3 at 19, 22–35.  Plaintiff requested further review, which the Appeals Council denied on May 2, 2025.  *Id.* at 2.  The ALJ's decision therefore constitutes the final, reviewable decision of the SSA.  *Sims* v. *Apfel*, 530 U.S. 103, 106-107 (2000); 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a).

**B.**     **Statutory Framework**

The Act authorizes Supplemental Security Income payments to "persons who have a 'disability.'"  *Barnhart* v. *Thomas*, 540 U.S. 20, 21 (2003).  Disability is defined under the Act as being "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); see also 20 C.F.R. § 416.905(a).  Federal regulations require an ALJ to evaluate a claimant's disability claim using a five-step sequential evaluation process.

---

[2]  Title XVI provides benefits based on financial need to "individuals who are aged, blind, or disabled regardless of their insured status."  *Smith* v. *Berryhill*, 587 U.S. 471, 475 (2019) (internal quotation marks and citation omitted).

[3]  Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

20 C.F.R. § 416.920. Through this process, an ALJ evaluates, in order, "whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock* v. *Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "The applicant bears the burden of production and proof during the first four steps." *Pass* v. *Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, "the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Mascio* v. *Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (internal quotation marks and citation omitted).

If the claimant does not carry their burden at the third step of the sequential evaluation, then the ALJ must assess relevant evidence and make a finding regarding the claimant's residual functional capacity. 20 C.F.R. § 416.920(e); *Monroe* v. *Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). Residual functional capacity is defined as "the most [the claimant] can still do despite [the claimant's physical and mental] limitations." 20 C.F.R. § 416.945. The residual functional capacity assessment "must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636 (quoting Social Security Ruling 96-8p, Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims (SSR 96-8p), 61 Fed. Reg. 34,474-01, 34,475 (July 2, 1996)). "Only after such a function-by-function analysis may an ALJ express [residual functional capacity] 'in terms of the exertional levels of work.'" *Monroe*, 826 F.3d at 187 (quoting *Mascio*, 780 F.3d at 636). The ALJ then uses the residual functional capacity determination at the fourth and fifth steps of the disability assessment. 20 C.F.R. § 416.920(e); *Monroe*, 826 F.3d at 179-180.

### C.    The ALJ's Decision

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the date of her application for benefits.  ECF No. 8-3 at 24.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "epilepsy, bipolar disorder, depression, personality disorder, and anxiety with panic attacks" and the non-severe impairment of obesity. *Id.* at 24–25 (bold removed).  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."[4]  *Id.* at 25 (bold removed). As relevant here, the ALJ evaluated Plaintiff's mental impairments under the "paragraph B" criteria and concluded that she had a moderate limitation in the area of "concentrating, persisting or maintaining pace" (in addition to the three other functional areas).[5]  *Id.* at 26.

Before continuing to the fourth step, the ALJ determined that Plaintiff had the residual functional capacity to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can occasionally climb ramps or stairs, and she can never climb ladders, ropes, or scaffolds.  She can occasionally balance.  She can perform work where she has no exposure to hazards such as moving machinery and unprotected heights.

---

[4]  Appendix 1 to 20 C.F.R. Part 404, Subpart P provides a listing of impairments.  "Adult Listings 12.00 *et seq.* . . . pertain to mental impairments, and consist of (1) 'paragraph A criteria,' which consist of a set of medical findings; (2) 'paragraph B criteria,' which consist of a set of impairment-related functional limitations; and (3) 'paragraph C criteria,' which relate to 'serious and persistent' disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment." *Autumn T.* v. *Saul*, Civil Action No. DLB-19-1572, 2020 WL 4194145, at *3 (D. Md. July 21, 2020).  A listing of impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1 is incorporated into the evaluation criteria for Supplemental Security Income benefits.  20 C.F.R. § 416.925.

[5]  A "moderate" limitation, which falls in the middle of a five-point rating scale, means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2)(c).

> She can perform work where she is limited to simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas. She can perform work where there are few, if any, workplace changes. The claimant can perform work where she has only occasional interaction with the public and coworkers.

*Id.* at 27 (bold removed and line break added). At the fourth step, the ALJ determined that Plaintiff has no past relevant work. *Id.* at 33. At the fifth step, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform." *Id.* at 33 (bold removed). The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Act and the SSA had properly denied her claim for benefits. *Id.* at 22, 34–35.

## II.     DISCUSSION

On appeal, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not explain the basis for including a production rate limitation in Plaintiff's residual functional capacity determination and failed to define "a specific production pace" in his hypothetical question to the vocational expert. ECF No. 13 at 7–20. Following discussion of the applicable standard of review, each argument is addressed in turn below.

### A.     Standard of Review

The scope of judicial review of the SSA's disability determination is "circumscribed." *Britt* v. *Saul*, 860 Fed. Appx. 256, 259 (4th Cir. 2021) (citing 42 U.S.C. § 405(g)).[6] The Court must affirm the decision "so long as the agency applied correct legal standards and the factual findings are supported by substantial evidence." *Id.*; *accord Mascio*, 780 F.3d at 634; *Coffman*

---

[6] After a hearing to determine an individual's eligibility for Supplemental Security Income benefits, the Commissioner's final determination is subject to the same judicial review as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

v. *Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  Factual findings supported by substantial evidence "shall be conclusive."  42 U.S.C. § 405(g); *see also Hays* v. *Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) ("[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if [the] decision is supported by substantial evidence.").

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  *Biestek* v. *Berryhill*, 587 U.S. 97, 102 (2019).  Under this standard of review, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* at 103 (quoting *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)); *see also Laws* v. *Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) ("Substantial evidence . . . is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.").  It is "more than a mere scintilla . . . [and] somewhat less than a preponderance."  *Laws*, 368 F.2d at 642.  The "threshold for such evidentiary sufficiency is not high."  *Biestek*, 587 U.S. at 103.

In conducting the substantial evidence inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *Sterling Smokeless Coal Co.* v. *Akers*, 131 F.3d 438, 439-440 (4th Cir. 1997).  Although an ALJ's decision must be sufficiently detailed to allow for meaningful judicial review, an "elaborate or even sophisticated" explanation is not required.  *Mascio*, 780 F.3d at 636-637; *T-Mobile S., LLC* v. *City of Roswell*, 574 U.S. 293, 302 (2015).  Rather, an administrative decision's reasoning need only be "reasonably discernible."  *Garland* v. *Ming Dai*, 593 U.S. 357, 369 (2021).  "Meaningful review is frustrated—and remand necessary—only where [the court is] unable to fathom the [ALJ's] rationale in relation to evidence in the record."  *Britt*, 860 Fed. Appx. at 262 (internal quotation marks and citation omitted).

**B.**     **Residual Functional Capacity and the Production-Rate Limitation**

Plaintiff argues that remand is required because the ALJ's explanation for the production-rate limitation in Plaintiff's residual functional capacity determination is lacking. ECF No. 13 at 7–15. A claimant's residual functional capacity is determined using a two-step process. The ALJ must first "identify the individual's functional limitations . . . and assess [their] work-related abilities on a function-by-function basis." SSR 96-8p, 61 Fed. Reg. at 34,475. "The function-by-function approach asks the ALJ to consider a claimant's specific 'exertional and nonexertional functions.'" *Ladda* v. *Berryhill*, 749 Fed. Appx. 166, 172 (4th Cir. 2018) (quoting SSR 96-8p, 61 Fed. Reg. at 34,476). The ALJ then expresses a claimant's residual functional capacity "in terms of the exertional levels of work," such as "sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 61 Fed. Reg. at 34,475; *see also* 20 C.F.R. § 416.967 (defining the physical exertion requirements of each exertional level of work). "When a claimant has several impairments, including non-severe impairments, the administrative law judge must consider their cumulative effect in making a disability determination." *Britt*, 860 Fed. Appx. at 261 (citing 20 C.F.R. § 416.945(a)(2)); *accord Brown* v. *Commissioner, Soc. Sec. Admin.*, 873 F.3d 251, 255 (4th Cir. 2017); *Mascio*, 780 F.3d at 635.

When formulating a residual functional capacity assessment, an ALJ "must consider all the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas* v. *Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), as amended (Feb. 22, 2019), (quoting *Monroe*, 826 F.3d at 188) (alteration in original); *see also* SSR 96-8p, 61 Fed. Reg. at 34,477 (directing that an ALJ must consider the "limitations and restrictions imposed by *all* of an individual's impairments, even those that are not severe," when assessing a claimant's residual functional capacity) (emphasis in original). While the SSA guidelines require a "function-by-function"

analysis to determine a claimant's residual functional capacity, the United States Court of Appeals for the Fourth Circuit has held that this analysis does not need to be explicit. *Mascio*, 780 F.3d at 636 (rejecting "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis"). Instead, the key consideration is whether the ALJ identified the evidence relied upon in determining the claimant's residual functional capacity and built "an accurate and logical bridge from the evidence to that conclusion." *Monroe*, 826 F.3d at 189 (internal quotation marks and citation omitted). A proper residual functional capacity analysis "has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311. The second component of this analysis, "the ALJ's logical explanation, is just as important as the other two." *Id.*; *see also* SSR 96-8p, 61 Fed. Reg. at 34,478 ("The [residual functional capacity] assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.").

The ALJ's decision with respect to the concentration, persistence, and pace limitation in Plaintiff's residual functional capacity determination has each of the required components. The ALJ discussed the relevant medical opinions and other evidence. ECF No. 8-3 at 28–33. The ALJ noted that Plaintiff presented "normal attention and concentration" during her April 2019 mental health status evaluation and that Plaintiff's "attention/calculation was only mildly impaired" during a July 2021 psychological consultation. *Id*. at 29–30. He further noted that during a July 2022 mental status examination, Plaintiff "denied issues with focus or concentration" and that "her attention, language, memory, and fund of knowledge were all intact." *Id.* at 30. The ALJ reviewed the findings of Y. Sagawa, MD, and E. Roskes, MD, and found them mostly persuasive because their opinions were "generally consistent with and supported by the evidence of record." *Id.* at 31–32. Dr. Sagawa and Dr. Roskes opined that

8

Plaintiff could follow "short and simple instructions" and "do routine and repetitive tasks within a system that did not operate at a production rate or which was driven by quotas." *Id*.; ECF No. 8-4 at 11, 22 (explaining Plaintiff "is able to handle short and simple instructions . . . and can do routine and repetitive tasks within a system that does not operate at production rate or which is driven by quotas"). The ALJ modified the administrative findings in part to more fully account for Plaintiff's social and adaptive limitations. ECF No. 8-3 at 32. The ALJ also found partially persuasive the findings of Jodi French, Psy.D., who concluded that Plaintiff "would have mild difficulty with her ability to perform repetitive tasks or to carry out simple directions, and she might have moderate difficulty following complex directions." *Id.* The ALJ explained that Dr. French's opinion was generally consistent with the medical evidence in the record, although she did not use "vocationally[ ] recognized terms" to describe Plaintiff's functional limitations. *Id.* The ALJ explained that based on these opinions and other evidence of record, such as Plaintiff's hearing testimony that her boyfriend "keep[s] track of her appointments and medication," he limited Plaintiff to "simple, routine, and repetitive tasks as well as work with few, if any, workplace changes." *Id.* at 32–33. The ALJ further explained that, based on the evidence of record, Plaintiff would be "further limited to no work at a specific production rate to account for any problems with focus and concentration during the workday." *Id.* at 33.

Contrary to Plaintiff's argument on appeal, the undersigned is not left "to guess" why the ALJ included a production rate limitation in her residual functional capacity. ECF No. 13 at 14 (quoting *Catherine B. v. Kijakazi*, Civil Action No. CDA-22-3089, 2023 WL 8361643, at *4 (D. Md. Dec. 1, 2023) (internal quotation marks and citation omitted)). In *Catherine B.*, the Court concluded that remand was appropriate "given the lack of a narrative discussion and the lack of any record evidence that might shed light on the appropriateness of a production-pace or assembly-line restriction." 2023 WL 8361643, at *4. Here, in contrast, Plaintiff's production-

rate limitation has explicit support in the record and the ALJ adequately explained why he included such a limitation in Plaintiff's residual functional capacity.  Similar to *Brook H.* v. *Dudek*, here the "ALJ's reliance on the opinions of state agency psychologists . . . in crafting the [residual functional capacity] provides support for the [concentration, persistence, and pace] limitations incorporated therein and enables the Court to perform meaningful review."  Civil Action No. CDA-24-49, 2025 WL 949389, at *3 (D. Md. March 28, 2025).

This Court has repeatedly held that a production-rate limitation "adequately accounts for a claimant's moderate [concentration, persistence, and pace] limitation."  *Id.* at *4 (collecting cases); *see also Estelle G.* v. *Dudek*, Civil Action No. CDA-24-12, 2025 WL 923411, at *4 (D. Md. Mar. 26, 2025) (collecting cases).  Moreover, Plaintiff does not argue that she cannot perform the determined residual functional capacity, identify any limitation that the ALJ should have included instead of or in addition to the determined production-rate limitation, or explain how a more detailed explanation might change the outcome of this case.  *Raushaun F.* v. *Bisignano*, Civil Action No. CDA-24-1792, 2025 WL 2774126, at *3 (D. Md. Sept. 26, 2025); *Estelle G.*, 2025 WL 923411, at *4; *Michelle W.* v. *O'Malley*, Civil Action No. CDA-23-2898, 2024 WL 3925065, at *4 (D. Md. Aug. 23, 2024).  In sum, the ALJ's decision with respect to Plaintiff's production-rate limitation in the residual functional capacity determination is supported by substantial evidence.

### C.      Hypothetical Question Posed to the Vocational Expert

Plaintiff further contends that the ALJ's asserted failure to define "a specific production rate" in his hypothetical question to the vocational expert necessitates remand.  ECF No. 13 at 15.  The Commissioner argues that the ALJ explained his basis for the production-rate restriction and further notes that "Plaintiff did not seek *any* clarification from the vocational expert on the nature of the jobs when he had the opportunity to do so at the administrative level."

ECF No. 16 at 11–12 (emphasis in original).

ALJs are afforded "great latitude in posing hypothetical questions . . . so long as there is substantial evidence to support the ultimate question." *Koonce* v. *Apfel*, No. 98-1144, 1999 WL 7864, at *5, 166 F.3d 1209 (Table) (4th Cir. Jan. 11, 1999). Hypothetical questions need only be "based on substantial evidence and accurately reflect a plaintiff's limitations." *Sarah H.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-20-3358, 2021 WL 4426875, at *1 n.1 (D. Md. Sept. 27, 2001); *see also Walker* v. *Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record.").

Here, the relevant testimony of the vocational expert was as follows:

> Q . . . [C]onsider a[ ] hypothetical individual -- same age, education and work experience as this particular Claimant. This hypothetical individual is able to perform work at all exertional levels. The hypothetical individual can occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, and occasionally balance. The hypothetical individual can perform work where she has no exposure to hazards, such as moving machinery and unprotected heights. *She can perform work that is limited to simple, routine and repetitive tasks in an environment where she's not expected to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas.* She can perform work where there are few, if any workplace changes. With those limitations, can this hypothetical individual perform . . . waitressing work?
>
> A No . . . .
>
> Q . . . Are there jobs in the national economy[] this hypothetical individual can perform?
>
> A There would be. One occupation may be that of a telephone information clerk . . . Another occupation . . . could be that of a[n] information clerk . . . . Another occupation may be that of an office helper.

ECF No. 8-3 at 65–67 (emphasis added). As the Commissioner notes, this hypothetical question "conveyed all of Plaintiff's work-related mental limitations the ALJ found supported by the

record—mirroring his [residual functional capacity] finding." ECF No. 16 at 11; *see also* ECF No. 8-3 at 27 (ALJ's residual functional capacity determination).

Plaintiff correctly observes that the term "specific production rate" is not defined in the *Dictionary of Occupational Titles*, an SSA resource that "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." *Pearson* v. *Colvin*, 810 F.3d 204, 205 n.1, 207 (4th Cir. 2015); ECF No. 13 at 15. Nevertheless, the subsequent examples the ALJ used in formulating the hypothetical question ("such as assembly line work or work that requires hourly quotas" (ECF No. 8-3 at 66)) provide adequate explanation of the meaning of the term. This case is therefore unlike *Chad H.* v. *Bisignano*, where the ALJ limited the claimant's residual functional capacity to work that "did not have specific production rates" to accommodate the claimant's concentration, persistence, and pace impairment. Civil Action No. DRM-25-380, 2026 WL 483338, at *2 (D. Md. Feb. 20, 2026). There, the Court concluded that the absence of any further explanation or description of the bare term "specific production rates" precluded meaningful judicial review and warranted remand. *Id.* at *5. Similarly, the Fourth Circuit held in *Thomas* v. *Berryhill*, that the ALJ's finding that the claimant "could not perform work 'requiring a production rate or demand pace,' . . . did not give [the Court of Appeals] enough information to understand what those terms mean." 916 F.3d at 312. In contrast, here, the ALJ's hypothetical question "contains terms that are subject to common understanding." *Kenneth L.* v. *Kijakazi*, Civil Action No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021) (finding that judicial review was not frustrated because the term "no strict production quotas" "plainly relates to the rigidity of the occupations' production requirements"); *accord Shuronn S.* v. *Kijakazi*, Civil Action No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022); *Delonte C.* v. *Kijakazi*, Civil Action No. TMD 20-2436, 2021 WL 4391089, at *5 (D. Md. Sept. 24, 2021).

12

Plaintiff relies on *Linger* v. *Commissioner of Social Security*, to assert that a few examples do not adequately explain an ambiguous production-rate limitation. No. 22-2192, 2025 WL 40548, at *5 (4th Cir. Jan. 7, 2025). Yet, unlike the case at bar, in *Linger* the Fourth Circuit concluded that the ALJ had failed to build "a logical bridge" between the evidence and the ALJ's conclusions, which precluded meaningful review. *Id.* As discussed previously, *see* II.B., *supra*, the ALJ here considered and discussed medical evidence that directly supports the production-rate functional limitation that was included in both the residual functional capacity determination and challenged hypothetical question. In sum, there was no error and remand is unwarranted.

## III.    CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed. A separate Order follows.

Date:  April 20, 2026

_____/s/_____
Erin Aslan
United States Magistrate Judge

13