**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **AUTUMN C.,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. EA-25-1592** |
| **FRANK J. BISIGNANO,** | * | |
| **Commissioner of Social Security,** | | |
| | * | |
| **Defendant.** | | |
| | * | |
| | * | |

**MEMORANDUM ORDER**

On May 16, 2025, Plaintiff Autumn C. petitioned this Court to review the final decision

of the Social Security Administration (SSA or the Commissioner) denying her claim for

benefits.[1]  ECF No. 1.  On April 20, 2026, the undersigned affirmed the final decision denying

Plaintiff's application for benefits.  ECF Nos. 19–20; *Autumn C.* v. *Bisignano*, Civil Action No.

EA-25-1592, 2026 WL 1072758 (D. Md. Apr. 20, 2026).  On April 30, 2026, Plaintiff moved for

reconsideration pursuant to Local Rule 105.10 (Dec. 1, 2025).  ECF No. 21.  The motion is fully

briefed, and no hearing is necessary.[2]  ECF No. 22; Local Rule 105.6.

A Local Rule 105.10 motion for reconsideration is construed as a Federal Rule of Civil

Procedure 59(e) motion to alter or amend a judgment.  *Jarvis* v. *Berryhill*, Civil Action No.

TMD-15-2226, 2017 WL 467736 at *1 (D. Md. Feb 3, 2017).  A motion for reconsideration

"may not be used to relitigate old matters, or to raise arguments[,] or present evidence that could

have been raised prior to the entry of judgment."  *Kimberly B.* v. *Kijakazi*, Civil Action No. TJS-

---

[1]  This case was referred to a United States Magistrate Judge with the parties' consent and
was reassigned to the undersigned on February 27, 2026.  ECF Nos. 3–4; 28 U.S.C. § 636; Local
Rule 301.4 (D. Md. Dec. 1, 2025).

[2]  Plaintiff elected not to file a reply and time for doing so has expired.  Local Rule
105.2(a).

20-2877, 2022 WL 748097, at *1 (D. Md. Mar. 11, 2022) (quotation marks and citation omitted). The Court may alter or amend a final judgment pursuant to Rule 59(e) only "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Krista M.* v. *Kijakazi*, Civil Action No. MJM-21-2474, 2023 WL 9173074, at *1 (D. Md. Dec. 7, 2023) (citing *United States ex rel. Becker* v. *Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002)). "The grounds for reconsideration are purposefully narrow to prevent the motion from being used to" relitigate issues the Court has already considered. *Crocetti* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. SAG-17-1122, 2018 WL 3973074, at *1 (D. Md. Aug. 1, 2018). Thus, as to "clear error," "there must be more than simply a 'mere disagreement' with a decision to support a Rule 59(e) motion." *Williams* v. *Fontanez*, Civil Action No. GLR-22-1882, 2023 WL 8174323, at *1 (D. Md. June 5, 2023) (quoting *Hutchinson* v. *Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)). This is because a "'factually supported and legally justified' decision does not constitute clear error." *Jarvis*, Civil Action No. TMD-15-2226, 2017 WL 467736, at *1 (quoting *Hutchinson*, 994 F.2d at 1081-1082). Further, "clear error" will not be found when the prior decision is "just maybe or probably wrong"; it must be "dead wrong." *TFWS, Inc.* v. *Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quotation marks and citations omitted). "As to the 'manifest injustice' standard, courts focus on whether there was fairness in the administrative process or a denial of due process." *Williams*, Civil Action No. GLR-22-1882, 2023 WL 8174323, at *1 (citations omitted). Ultimately, reconsideration of a final judgment is an "extraordinary remedy that should be used sparingly." *Jarvis*, Civil Action No. TMD-15-2226, 2017 WL 467736, at *2.

Plaintiff contends that the April 20, 2026 Memorandum Opinion is inconsistent with other decisions of this Court with respect to the Administrative Law Judge's (ALJ) use of the phrase "specific production rate" in a hypothetical question posed to a vocational expert. ECF

2

No. 21 at 3–4[3] (citing *Al-Nissa J.* v. *Bisignano*, Civil Action No. DRM-25-1593, 2026 WL 1088433, at *4 (D. Md. Apr. 21, 2026); *Mark M.* v. *Bisignano*, Civil Action No. EA-24-3738, 2026 WL 739424, at *7 n.11 (D. Md. Mar. 16, 2026)).  Plaintiff contends that the differing case law reflects the ambiguity of the term "specific production rate," and thus the Commissioner's decision was not supported by substantial evidence.  ECF No. 21 at 4.  The Commissioner counters that reconsideration is unwarranted because there was no clear error.  ECF No. 22 at 4.

Here, the ALJ determined that Plaintiff had the residual functional capacity to, among other things, "perform work where she is limited to simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas." *Autumn C.*, Civil Action No. EA-25-1592, 2026 WL 1072758, at *3.  As relevant here, Plaintiff argued that substantial evidence did not support the ALJ's decision because he failed to define "a specific production rate" in the hypothetical question posed to the vocational expert.  ECF No. 13 at 15–20.  The undersigned concluded that although that the term "specific production rate" is not defined in the *Dictionary of Occupational Titles*, the subsequent examples the ALJ used in formulating the hypothetical question provided adequate explanation of the meaning of the term.[4]  *Autumn C.*, Civil Action No. EA-25-1592, 2026 WL 1072758, at *6 (citing *Shuronn S.* v. *Kijakazi*, Civil Action No. TJS-20-3756, 2022 WL 391434, at *2 (D. Md. Feb. 9, 2022); *Delonte C.* v. *Kijakazi*, Civil Action No. TMD 20-2436, 2021 WL 4391089, at *5 (D. Md. Sept. 24, 2021); *Kenneth L.* v. *Kijakazi*, Civil Action No. SAG-20-624, 2021 WL 4198408, at *2 (D. Md. Sept. 15, 2021)).

---

[3] Page numbers refer to the pagination of the Court's Case Management/Electronic Case Files (CM/ECF) system printed at the top of the cited document.

[4] The *Dictionary of Occupational Titles* is a Social Security Administration resource that "list[s] occupations existing in the economy and explain[s] some of the physical and mental requirements of those occupations." *Pearson* v. *Colvin*, 810 F.3d 204, 205 n.1, 207 (4th Cir. 2015) (citations omitted).

As Plaintiff observes, case law on this issue is mixed.  Decisions of this Court have held that the phrase "'no strict production quotas' contains terms that are subject to common understanding."  *Kenneth L.*, SAG-20-624, 2021 WL 4198408, at \*2; *accord Brandy K.* v. *Kijakazi*, Civil Action No. CBD-20-3749, 2022 WL 798690, at \*6 (D. Md. Mar. 16, 2022); *Shuronn S.*, Civil Action No. TJS-20-3756, 2022 WL 391434, at \*2; *Maryann H.* v. *Kijakazi*, Civil Action No. TMD-20-2520, 2021 WL 5239852, at \*5 (D. Md. Nov. 10, 2021).  Other decisions of this Court have concluded that "a limitation on 'production rate or pace' combined with a prohibition on quotas"—or an explanation, additional descriptor, or example—"provides enough detail for judicial review."  *Melissa J.* v. *Kijakazi*, Civil Action No. BAH-22-1003, 2023 WL 206686, at \*3 (D. Md. Jan. 13, 2023) (collecting cases); *Briana H.* v. *O'Malley*, Civil Action No. CDA-23-1288, 2024 WL 4349836, at \*5 (D. Md. Sept. 30, 2024) (explanation); *Dawn B.* v. *Kijakazi*, Civil Action No. BPG-21-69, 2022 WL 1714918, at \*3 (D. Md. Jan. 11, 2022) (additional descriptor); *Jackie W.* v. *Commissioner, Soc. Sec. Admin.*, Civil Action No. DLB-18-3883, 2019 WL 5960642, at \*4 (D. Md. Nov. 13, 2019) (example).

Other decisions of this Court have concluded that phrases like "specific production rate pace," even when coupled with examples ("such as assembly line work or hourly production quotas"), are too ambiguous to permit judicial review.  *Al-Nissa J.*, Civil Action No. DRM-25-1593, 2026 WL 1088433, at \*4; *see also Alkein C.* v. *Bisignano*, Civil Action No. TJS-25-1310, 2026 WL 1266164, at \*2 (D. Md. May 8, 2026).  These decisions rely on an unpublished decision of the United States Court of Appeals for the Fourth Circuit as persuasive authority.  *E.g.*, *Al-Nissa J.*, 2026 WL 1088433, at \*4 (citing *Linger* v. *Commissioner of Soc. Sec.*, No. 22-2192, 2025 WL 40548 (4th Cir. Jan. 7, 2025)).  As discussed in the previous Memorandum Opinion, the undersigned finds *Linger* distinguishable from the case at bar.  *Autumn C.*, Civil Action No. EA-25-1592, 2026 WL 1072758, at \*7.

*Linger* reversed and remanded the case due to myriad errors that permeated the ALJ's analysis and rendered the decision as a whole unsupported by substantial evidence.  No. 22-2192, 2025 WL 40548, at *5.  As to the residual functional capacity determination, the ALJ did not address the plaintiff's ability to perform tasks for the full workday, did not explain how the identified limitations addressed the plaintiff's mental limitations in two functional areas, and did not define "no fast[-]paced production requirements."  *Id.* (quotation marks omitted).  Additionally, the Court concluded that there was insufficient evidence to support the SSA's factual determinations, the ALJ gave too little weight to medical opinions, failed to reconcile conflicting evidence, or explain how the plaintiff's ability to carry out daily activities translated into the ability to work a full day.  *Id.* at *6.  Although the *Linger* panel concluded that the phrase "no fast[-]paced production requirements such as assembly line work or piecemeal quotas" engendered "uncertainty as to the intended scope of the limitation," the undersigned does not reach the same conclusion as to phrase at issue here.  *Id.* at *4, 5.  Here, the ALJ determined that Plaintiff "can perform work that is limited to simple, routine and repetitive tasks in an environment where she's not expected to perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas" and included this limitation in a hypothetical question to the vocational expert.  ECF No. 8-3 at 27 (bold removed), 65–66.  Consistent with the body of law arising from decisions of multiple judicial officers of this Court, the undersigned does not find this limitation too ambiguous to preclude meaningful review.  *Linger* does not compel a different conclusion.  There is therefore no basis for reconsideration because, as relevant here, there is no intervening change in controlling law and no clear error.

The undersigned's previous decision in *Mark M.*, Civil Action No. EA-24-3738, 2026 WL 739424, does not alter this analysis.  The undersigned reversed and remanded that case because, as relevant here, "[t]he ALJ's limitation regarding work that does not require 'a specific

production rate such as assembly line work or work that requires hourly quotas,' d[id] not adequately address Plaintiff's moderate limitation in concentration, persistence, and pace."[5]  *Id.* at *6.  The undersigned noted that the term "specific production rate" did "not give . . . enough information to understand what those terms mean," but key to the Court's ruling was the fact that the undersigned was "'left to guess' about how the ALJ determined that a 'production-pace or assembly-line restriction' could accommodate Plaintiff's moderate concentration, persistence, and pace limitations."  *Id.*  This error was not the ambiguity of the term "specific production rate," but rather the lack of explanation as to the connection between the plaintiff's moderate limitation and the residual functional capacity determination.  The undersigned also concluded— in a footnote—that the ALJ's hypothetical question that used the term "specific production rate" was also grounds for remand.  *Id.* at *7 n.11.  A more considered review of applicable case law calls for reconsideration of that aspect of the *Mark M.* decision, not this one.  As set forth above, the majority view in this Court is that the phrasing employed here—that Plaintiff could "perform work where she is limited to simple, routine, and repetitive tasks in an environment where she is not expected to perform work requiring a specific production rate, such as assembly-line work or work that requires hourly quotas"—contains commonly understood terms and examples that collectively provide sufficient explanation for appellate review.

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion (ECF No. 21) is DENIED.  The Clerk of the Court shall CLOSE this case.

IT IS SO ORDERED.


Date:  July 15, 2026                                    /s/
                                        Erin Aslan
                                        United States Magistrate Judge

---

[5]  The undersigned also ruled that Administrative Law Judge erred in her assessment of the plaintiff's physical impairments and subjective statements.  *Mark M.* v. *Bisignano*, Civil Action No. EA-24-3738, 2026 WL 739424, at *8-11 (D. Md. Mar. 16, 2026).